HARRIS, Judge.
Daniels was convicted of robbery and sentenced to IS years in the penitentiary. He was represented by retained counsel and at arraignment he pleaded not guilty. After conviction and sentence he gave notice of appeal and petitioned the Court for a free transcript and the appointment of counsel. He was found to be indigent and he was furnished a free transcript and trial counsel was appointed to represent him on appeal.
The facts adduced by the State are undisputed that on November 12, 1974, between 6:45 and 7:00 p.m., the Majik Mart grocery .store located on Zeigler Boulevard in Mobile, Mobile County, Alabama, was robbed by a lone gunman. The bandit was a black man and according to the testimony of Mrs. Carol Hunter, the cashier on duty at the time of the robbery, she had seen the robber on three or four occasions as a customer in the store, but she did not know his name.
Appellant did not testify but offered several witnesses in support of an alibi.
Mrs. Hunter testified that she and another employee, Craig Doster, were the *252 only persons in the store at the time the bandit entered the store. Doster was sitting on a stool behind the counter where the cash register was located and Mrs. Hunter was standing at the cash register. The bandit walked up to the cash register and Mrs. Hunter asked him if she could help him and he replied that she had what he wanted right there on the counter. He pulled out a pistol and pointed it directly in the face of Doster and ordered him to give him all the money he had in his pockets. Doster stood up and put his hands in his pockets and the bandit shot him in the face and Doster fell on the floor. The bandit then pointed the pistol on Mrs. Hunter and ordered her to give him the money in the cash register. She had about 80 dollars in currency and she handed him all the currency; he took the money in his left hand and put it in his pocket while still holding the pistol in Mrs. Hunter’s face. After he put the money in his pocket Mrs. Hunter stepped back and said, “For God’s sake, don’t shoot.” She turned her head and the robber shot her. The bullet entered the base of her skull and lodged under her chin. Mrs. Hunter fell back and was lying on the floor looking straight at the robber. She was still conscious. The robber leaned over the counter to shoot her again and at this point Craig Doster hollered, “We have been robbed, get an ambulance,” and the robber shot at Doster again but he did not hit him.
Mrs. Hunter further testified that the robber then left the store and Doster got up and came to her. She stated the store was well lighted and she got a good look at the robber at close quarters and she would never forget his face. She was asked to look in the courtroom and see if she recognized the man who shot her and Doster and she pointed to the defendant and made a positive in-court identification of appellant as the robber. She further said the robber was not disguised in any way and she looked him in the face from three to five minutes during the time it took to complete the shooting and robbery.
Mrs. Hunter further stated that she observed appellant standing outside the store for about two minutes before he came in the front door. She said she based her identification of appellant on the fact that he robbed and shot her that night in the store.
On cross-examination she testified that she had 20/20 vision and did not wear glasses. She was carried by ambulance to the hospital the night of the robbery and had an operation in which the bullet was removed from under her chin. The bullet was not removed during the first operation but that she had another operation at which time the bullet was removed. She was asked if she had been shown any pictures of the defendant and if she had viewed a lineup. She answered that she had previously identified appellant from photographs and had also identified him at a lineup.
Mrs. Hunter stated that she stayed in the hospital nine days after she was first admitted. That on the day following the initial operation by a team of surgeons she was placed in intensive care and that her condition was not critical, but guarded. That after she got out of intensive care Detective Robert Moore brought two photographs for her to view and he did not make a statement with respect to whether either one of the men in the photographs was a suspect in the robbery, but she identified appellant as one of the two who robbed and shot her. She said she was not in pain at the time she was shown the photographs and identified appellant but she did not know if she had been given anything for pain. She stated that when the police officers came to the hospital and asked her for a description of the robber, she told them he was wearing a dark brown jacket or windbreaker and black trousers.
Mrs. Hunter further testified that after she was released from the hospital, she went to view a lineup and positively identified appellant as the robber.
*253 On redirect examination Mrs. Hunter testified that she was not identifying appellant in Court based on the photograph she had seen or the lineup she attended but that she was basing her identification of appellant because she saw him face to face in the store for three to five minutes at the time he shot and robbed her.
Craig Doster testified that he was 19 years of age at the time of appellant’s trial and that he and Mrs. Hunter were working together at the Majik Mart on November 12, 1974, at the time the store was robbed and he and Mrs. Hunter were shot. He stated that when the man walked into the store, he was sitting behind the cash register on a stool behind the counter, and Mrs. Hunter was behind the counter next to him. That the man walked to the cash register where Mrs. Hunter was standing and he heard her say, “May I help you?” He heard the man say, “You have everything I need right here,” and he saw the man pull a .22 pistol, nickel-plated, with hollow point bullets, out of his right coat pocket and point it toward his forehead, and said, “Give me all of the money you have in your pocket.” Doster said he had one penny in his pocket and he was going to give that to the man but he shot him in the forehead saying, “He shot me right here across this eye.” He lost the sight of that eye and had an artificial eye at the time he was testifying. He further stated that the surgeons who operated on him decided to leave the bullet in his head as it was too risky to take it out. He said that after he was shot, he regained consciousness on the floor about six feet from where he was when the robber shot him and about that time he saw the man shoot Mrs. Hunter. He thought he heard someone coming in the store and he hollered to them to, “get an ambulance, we have been robbed,” and then he heard another gunshot, but he did not know who fired the shot.
Doster further testified that the store was well lighted — that the store lights were brighter than the lights in the courtroom —that he got a good look at the robber’s face and that he would never forget that face. Doster was asked to look around the courtroom and see if he recognized the man that shot his eye out and he pointed to appellant and made a positive in-court identification of appellant saying, “That is him right there.” This witness was asked if he was identifying appellant because someone showed him some pictures and he replied, “No, sir. I am making that identification because he is the one who shot me at the store. I remember that face.”
On cross-examination Doster testified that at the time of the robbery he did not wear glasses and that his eyesight was 20/20 and that he still had 20/20 vision in his good eye. He said he saw the man outside of the store before he came in the front door, and walk to the cash register. That he was looking at the man’s face all the time he was talking to Mrs. Hunter and that when the bandit pointed the pistol in his face, he was close enough to see the holes in the points of the bullets.
Doster further stated that he was carried to the hospital that night and that he did not wake up until the next day. That he did not know what type of pain relieving medication was given to him but he knew he was given something for pain. He said Detective Moore came to see him in the hospital but he could not remember whether it was the next day or the day after. That he was shown three or four pictures but he didn’t make a positive identification.
Doster further testified that several days after he was released from the hospital he viewed a lineup of four or five men and they were all black and fairly young. He stated, “I made a positive identification in the lineup.” He stated that he did not go to the lineup with Mrs. Hunter, that Mrs. Hunter went first and after she made her identification, she went to another room. That he did not speak to Mrs. Hunter but he later understood that she identified somebody.
*254 He stated he did not know that appellant had been formerly charged with robbery before he went to the lineup, and that no one told him they had caught the person who committed the robbery. That Detective Moore did tell him they had a suspect but he was not told that the suspect was going to be in the lineup. He said when he was shown' several pictures he made a tentative identification but he was not sure, but when he viewed the lineup, he made a positive identification.
On redirect examination he was asked if he needed to hear a voice to make an identification and he replied, “No, sir.” He was asked, “How do you identify a person?” and he replied, “Well, when somebody sticks a gun in my face, I don’t forget who did it.”
Howard H. Counts testified that he was an employee of the U. S. Postal Service as a letter carrier. That on the night of November 12, 1974, he drove his car to the Majik Market on Zeigler Boulevard and parked his car directly in front of the store. He was alone at the time. After cutting his motor off, he looked inside the store and got a good view of the cash register area. He saw a lady handing money to a man at the cash register and saw the man shoot her and the man ran out the front door and shot at him. He stated that he did not get a good look at the man’s face as he was ducking down in his car to keep from being shot. He could only remember the man wearing a brown looking coat. That he went to a lineup at the police station but he could not identify anybody. He did state that the man had the pistol in his right hand when he shot the woman in . the store and when he took a shot at him. After the robber left, he went to a telephone booth outside the store building and called the police and ambulance.
Mr. Counts further testified that the woman who was shot at the cash register fell on the floor behind the counter but while he was in the telephone booth, the boy who got shot came outside the store and he saw blood on the right side of his face. He said at that point two men came up and he sent the boy back in the store with these men and made him lie down.
On cross-examination he testified that he was not shown any pictures but he did attend a lineup in which there were five or six men and he understood the officers had a suspect in custody but he did not identify the robber in the lineup.
The State then rested and appellant made a motion to exclude the State’s evidence for failure to make out a prima fa-cie case and connect appellant to the crime. He further moved to exclude the identification of appellant because the State used illegal, unconstitutional and suggestive methods to prove appellant’s identification. These motions were overruled and denied.
Appellant then put on a parade of witnesses, most of whom were members of his family, or family connected, in an attempt to sustain his alibi. The testimonies of these witnesses were confusing and contradictory as to the time and places they saw appellant or about the time the robbery and shooting took place. There were so many discrepancies in their testimonies as to make their stories entirely suspect. It developed during the examination of the alibi witnesses that appellant was unemployed. He owned a Cadillac automobile and was several months behind in his payments.
On rebuttal the State called Detective Robert Moore and he testified that he got a radio call on the night of November 12, 1974, at 7:08 o’clock and the call was made by Mr. Counts and he went straight to the Majik Mart where the robbery and shooting took place. Subsequently, he carried two photographs to the hospital to show Mrs. Hunter. Before he went in to see Mrs. Hunter, he talked to her doctor and got clearance to visit her. The doctor told him she couldn’t talk because she had a tube in her throat. He asked the doctor if it was all right for him to talk to Mrs. Hunter and the doctor said, “Yes.”
*255 The detective showed Mrs. Hunter the two photographs and when she saw the photograph of appellant, she became visibly-upset, and he asked her if he was the one who robbed and shot her and she nodded her head to indicate “yes.” The detective stated that Mrs. Hunter positively identified appellant from one of the two photographs. He further testified that Mrs. Hunter was not heavily sedated at the time he showed her these two photographs. After she identified appellant, Detective Moore told some other officers to pick up appellant on Wednesday, November 13, 1974.
The detective further testified that after Mrs. Hunter and Craig Doster were discharged from the hospital they separately viewed a lineup and both of them positively identified appellant as the robber. He further stated that appellant had an attorney at the lineup and his attorney told him not to say anything to Detective Moore and Moore did not ask him any questions. He did advise him of the Miranda rights and warnings.
Robbery is the felonious taking of goods or money from the person of another, or in his presence, against his will by violence or by putting him in fear, and such violence must precede or accompany the stealing. Tunstill v. State, 33 Ala.App. 460, 34 So.2d 857; Hardis v. State, 28 Ala.App. 524, 189 So. 216.
Appellant was not deprived of due process of law by virtue of the fact that a detective brought to the hospital two photographs for identification by the shooting victim, who was not able to visit the jail where appellant was confined, and who was required to be hospitalized for major surgery in an effort to save her life. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.
As soon as she was released from the hospital, she was carried to a lineup and positively identified appellant at which time appellant’s counsel was present.
The victim testified that laying aside the photographic identification and her positive identification of appellant at the lineup, she based her identification of appellant in a face-to-face confrontation in close quarters in a well lighted store at the time she was robbed and shot. This was a clear case of an independent origin. Hannon v. State, 48 Ala.App. 613, 266 So.2d 825; Houston v. State, 49 Ala.App. 403, 272 So.2d 610; Thomas v. State, 50 Ala. App. 227, 278 So.2d 230.
In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Court said:
“Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method’s potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misiden-tification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, and with decisions *256 of other courts on the question of identification by photograph.”
We hold there was sufficient evidence before the trial court, set out above, to show that the in-court identification by the victim stemmed from an independent origin; hence, fulfilling the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.
An accused is not entitled to counsel at a pre-indictment lineup. Houston v. State, supra; Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. However, in this case counsel for appellant was present and no due process questions are presented.
Alibi testimony, like all other conflicting evidence in a criminal prosecution, is an issue to be determined by the jury. The jury resolved this issue against appellant and that is that. Brown v. State, 229 Ala. 58, 155 So. 358; Gillis v. State, 242 Ala. 550, 7 So.2d 563; Mosley v. State, 54 Ala.App. 59, 304 So.2d 613.
We have carefully searched the record and find no reversible errors.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.