[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 27 
This is an appeal from a conviction of robbery and sentence of ten years' imprisonment. The appellant is represented by court appointed counsel both at trial and on appeal.
In urging this court to reverse his conviction the major argument advanced by the appellant is that the in-court identification was tainted by the use of impermissibly suggestive out-of-court confrontation and lineup procedures.
Around 2:30 o'clock on the afternoon of August 24, 1977, Mr. and Mrs. Lige McQueen were operating their service station and grocery store near Greenville, Alabama. The appellant and an accomplice drove into the McQueens' station and put some gasoline into their automobile. The appellant then went inside the store with Mr. McQueen where he placed a pistol in McQueen's back and forced him to open the cash register. The appellant took between thirty and forty dollars, made everyone in the store lie down on the floor, and fled. Pam Brooks and Mrs. Mutt Reeves were in the store during the robbery and witnessed the crime.
Around 11:00 o'clock that same night, Mr. and Mrs. McQueen and Miss Brooks identified the appellant at the police station. The next day these same individuals and Mrs. Reeves identified the appellant in a lineup in the Sheriff's Department. The only evidence against the appellant consisted of the identification testimony of these witnesses.
 I
The appellant contends that the two pretrial identification procedures employed in this case were so impermissibly suggestive as to render a subsequent in-court identification inadmissible as a matter of law.
A showup was held at the police station in Greenville, Alabama, at 11:00 P.M., approximately nine hours after the robbery occurred.
Ten year old Pam Brooks testified that she rode to the City Hall with Mr. and Mrs. McQueen; that each of them individually went into a room where they viewed the appellant through a one way mirror; that they viewed the accomplice separately; that she identified them as being "the ones that robbed us"; that prior to the time she identified the two men, she did not discuss this identification with the police; that during the identification procedure, the police did not say anything to her; and that the police did say that
 "they had seen two men hitchhiking that looked like the two men that we had described that were in the car, and they said they thought it was probably the men, so they took them to the police headquarters, and that night, they called us to come up there."
On suggestive cross examination by defense counsel Miss Brooks admitted that the most unusual thing about the robber was his green shirt. The appellant was wearing this shirt during the showup. She was positive in her identification of the appellant and did not discuss it afterwards with the police.
Mr. McQueen testified that the police told him that they had a suspect and wanted to see if he could identify him and that the police did not tell him that they had the person who robbed his store. He stated that the "brown" shirt the appellant was wearing was not the distinguishing characteristic about the appellant: "When he throwed that gun on me, that's what made me look deeper". He also identified the appellant as the robber. *Page 28 
Mrs. McQueen testified someone called and "said they had a suspect and wanted to know if we could come and identify them"; that they didn't say that they had the robbers; that she "knew who it was the minute I saw him"; that she did not discuss her identification with the police; and that the shirt "sticks out in (her) mind".
Mrs. Reeves did not view the showup.
Officer Kenny Flowers, a Lieutenant for the Greenville Police Department, testified that each witness was brought into a small room with a one way mirror for just a moment to look at the appellant and each identified him; that they observed him one at a time; that two police officers were present in the room but made no statements to the witnesses; that he didn't remember suggesting that they had apprehended the robbers, or remember anyone making that statement; and that the appellant was alone in the room. Lieutenant Flowers did not remember when the appellant was informed that he was under arrest for robbery but stated that the appellant was probably told he was being detained as a suspect in a robbery case up until the point of identification.
Though the practice of showing a suspect singly to persons for purposes of identification, and not as part of a lineup, has been widely condemned, Stovall v. Denno, 388 U.S. 293,87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), the admission of evidence of a showup without more does not violate due process of law. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401 (1972); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243,53 L.Ed.2d 140 (1977); Annotation: Admissibility of Evidence of Showup Identification as Affected by Allegedly Suggestive Showup Procedures, 39 A.L.R.3d 791 (1971).
Convinced of the dangers of eyewitness identification, the United States Supreme Court has established constitutional and procedural safeguards surrounding the use of such testimony.United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926,18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263,87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall, supra; Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson,supra; Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999,26 L.Ed.2d 387 (1970).
Whether an out-of-court identification procedure has violated due process depends upon the "totality of the circumstances".Stovall, supra; Simmons v. United States, 390 U.S. 377,88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Coleman, supra; Biggers,supra. This totality of the circumstances test is the standard in deciding whether an identification procedure is unnecessarily suggestive and conducive to irreparable mistaken identification. Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1973). Under this test the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal act at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation. Biggers, 93 S.Ct. 382; Robinson v. State,45 Ala. App. 236, 228 So.2d 850 (1969). Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
In determining the constitutional adequacy of pretrial identification procedures and the admissibility of identification testimony, the central question is whether, under the totality of the circumstances, the identification was reliable. Manson, supra. This determination involves the application of a two-pronged test.
 "(T)he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' [Stovall] or `impermissibly' [Simmons] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been `unnecessarily' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that allowing *Page 29 
the witness to make an in-court identification would be a denial of due process." United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970).
Suggestiveness is inherent in the showup identification procedure. Wall, Eye-Witness Identification In Criminal Cases, p. 28. Nevertheless, prompt, on-the-scene confrontation may be consistent with good police work. Cornelius v. State,49 Ala. App. 417, 272 So.2d 623 (1973); Payne v. State, 48 Ala. App. 401, 265 So.2d 185, cert. denied, 288 Ala. 748, 265 So.2d 192, cert. denied, 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669
(1972); Robinson v. State, 55 Ala. App. 658, 318 So.2d 354
(1975). One-on-one confrontations conducted shortly after the commission of the crime may be justified for they allow the "fresh" identification before memory has dimmed or the suspect has changed his clothing, the prompt release of innocent persons, and the continuation of the search for the perpetrator with a minimum of delay. Wall, p. 38. For these considerations to be effective, the on-the-scene identification must be prompt. Carter v. State, Ala.Cr.App., 340 So.2d 94, 98 (1976). ("Our consideration of Robinson, the supporting authorities cited therein, and other authorities on the subject, convinces us that most, if not all, of the applicable cases have involved periods of time of less than an hour between the crime and the confrontation.")
The state argues that the showup procedure was not suggestive but, even if it were, the in-court identifications of the appellant were based on sources independent of the suggestive showup. The state correctly points out that each witness was positive in his identification of the appellant as the robber. Despite these we cannot accept either of these positions.
It is mere sophistry to argue that the showup was not unnecessarily suggestive. A showup by its inherent nature is suggestive because the witness is given no other choice. However it is permitted where conducted promptly after the commission of a crime or demanded by necessity, emergency or exigent circumstances. No justification for the use of the showup can be advanced in this case. Under the particular circumstances facing us, the showup was held at an unusual hour in light of the facts that the robbery had occurred nine hours earlier and that a lineup was held at 1:00 P.M. the following afternoon. Also the fact that the appellant wore a green shirt in the showup constituted an additional element of suggestiveness in the identification procedure. Standing alone the fact that the accused wore a distinctive article of clothing may not have tainted the identification procedure. SeeGriffin v. State, Ala.Cr.App., 1 Div. 838 (Ms. February 7, 1978, cert. denied, Ala., Ms. March 31, 1978); Childers v.State, Ala.Cr.App., 339 So.2d 597, cert. denied, Ala.,339 So.2d 601 (1976). However the totality of the circumstances, the combined and cumulative effect of these factors — the nature of the confrontation itself, the lack of necessity for a showup, the unusual hour, and the distinctive clothing — creates an unduly suggestive identification procedure.
If, despite the violation of due process standards, the prosecution can establish by clear and convincing evidence that the in-court identification testimony, rather than stemming from the unfair pretrial confrontation, has an independent source, the in-court testimony need not be excluded. Wade,87 S.Ct. 1939. This record contains no such clear and convincing evidence. From the record we are unable to determine the opportunity of each witness to view the criminal at the time of the crime though we know that the appellant was at the scene from ten to twenty minutes, the witness's degree of attention and the accuracy of any prior description. The record is silent as to how long each witness observed the appellant during the robbery, that they in fact observed him with any degree of concentration, and the distance and lighting conditions under which he was observed. Those witnesses who were able to describe the appellant did so in general terms almost totally lacking in specifics. While we are aware that certain *Page 30 
distinguishing differences in individuals defy definition and articulation, the descriptions given in this instance are particularly void of detail. While the witnesses in this case may have an independent basis for identifying the appellant apart from the showup, as there was some evidence relevant to such a determination, the record simply does not support such a conclusion by clear and convincing evidence. On the record now before us we cannot make the determination whether the in-court identifications had an independent origin.
Because the guilt or innocence of the appellant turns solely on the basis of the identification testimony and, apart from that, there is no evidence to even connect the appellant with the crime, we cannot conclude that the evidence of the identification procedures was harmless error. Chapman v.California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
In this case the prosecution did not introduce the tainted pretrial confrontation evidence until the matter had been injected into the trial by the defense. Therefore the appropriate procedure is to remand the conviction of the appellant to the trial court for a hearing to determine whether the in-court identifications had an independent basis or source. See Wade, supra; Gilbert, supra; Sobel, Eye-WitnessIdentification, pp. 52-53. In view of this determination, we need not consider the fairness of the lineup conducted in this case.
 II
During the hearing on the motion to suppress the appellant attempted to introduce into evidence a tape recording of the preliminary hearing for purposes of impeaching the testimony of the prosecution witnesses on their identification of the appellant and to corroborate the testimony of one of the defense witnesses. The trial court refused to admit the tape recording on the basis that "the whole tape would (not) be admissible for the purposes of impeaching the witness as to that particular statement". The trial judge told defense counsel that he could use the pertinent parts of a transcription of the tape recording for purposes of impeachment. Defense counsel then agreed to furnish the state with a copy of the transcript but made no further attempt to introduce any portion of it at the hearing or at trial.
This refusal of the trial judge to allow the recording or transcription of the entire preliminary hearing or even of all of the testimony of a single witness at that hearing was proper. This is a matter within the discretion of the trial court.
 "The case of Patterson v. State, 191 Ala. 16, 67 So. 997, declares the rule to be that the whole of a document should not ordinarily be admitted but only the contradictory part. . . . This holding, however, is subject to other cases which say that admittance of the whole or the contradictory part rests in the discretion of the trial court, 1 McElroy on Evidence 379 and cases therein cited, and, further, if a contradictory statement in a document if so interwoven with a noncontradictory statement therein as to render it impracticable to show the contradictory statement without also showing the non-contradictory statement, the whole of the document is admissible, Kennedy v. State, 85 Ala. 326, 5 So. 300, 1 McElroy, supra." Byrd v. State, 51 Ala. App. 234, 238, 283 So.2d 683 (1973).
 III
At trial defense counsel objected to the testimony of a witness it expected the state to call. The witness was the fifteen year old accomplice of the appellant. The objection was that the accomplice was not represented by counsel and therefore could not waive his right against self-incrimination absent a showing by the state of his prior adjudication by the Juvenile Court. At that time the trial court did not rule on defense counsel's objection not knowing whether the state would call the accomplice to testify.
When Thomas Mehard took the witness stand later in the trial, the court, of its own accord, ascertained from the state that Mehard was the accomplice. By questioning *Page 31 
him the court determined that he had had no adjudication by the Juvenile Court and refused to permit the witness to testify. Defense counsel then requested that the jury be instructed "that they not take any inference from this boy being here?" The trial judge responded, "All right, gentlemen, anything else?" and the state rested its case.
We find no error to reverse in this regard. The evidence before the jury disclosed that the appellant had an accomplice. This accomplice was not permitted to testify against the appellant and his mere exhibition in the courtroom was not error. Williams v. State, Ala.Cr.App., 354 So.2d 48, cert. denied, Ala. 354 So.2d 53 (1977).
Because a pretrial identification procedure was unnecessarily suggestive and because we are unable to determine whether the in-court identifications had any independent basis, this case is remanded to the trial court with instructions that a hearing be held to determine whether such independent basis exists. In this hearing the burden of proof is upon the state to show by clear and convincing evidence to the satisfaction of the trial judge that the witnesses had an independent basis for their in-court identification of the appellant apart from the suggestive confrontation procedures.
REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.
All Judges concur.
 On Return to Remand
In accordance with the request of this Court, the trial court held a hearing to determine whether the in-court identifications of the appellant had an independent basis or source not connected with the pretrial identification procedure. The trial judge found:
 "Based on the testimony at said hearing, the Court is of the opinion and adjudges that there was clear evidence that the witnesses identifying the defendant had an independent basis for their in-court identification of the defendant apart from what the Alabama Court of Criminal Appeals found to be suggestive confrontation procedures."
The record on remand supports this conclusion to the extent that this is the only finding authorized from the testimony. Therefore the admission of the in-court identifications of the appellant was proper.
We have searched the record and finding no error prejudicial to the appellant affirm the judgment of conviction.
AFFIRMED.
All the Judges concur.