The appellant was indicted and convicted for the criminal possession of a forged instrument in the second degree in violation of Ala. Code 13A-9-6 (Supp. 1977). The trial court fixed his punishment at eight years in the state penitentiary. At arraignment, in the presence of counsel, appellant pleaded not guilty and not guilty by reason of insanity. Appellant is represented on this appeal, as he was at trial, by court-appointed counsel and has been furnished a free transcript.
The facts in this case are not complicated. Briefly, the State's evidence proved that appellant cashed a check purportedly signed by a J.C. Wilson made payable to an A.V. Jackson at the Winn-Dixie Store on the Lower Wetumpka Road in Montgomery on or about February 11, 1980.
Mrs. Ila Juanita Thomas, head cashier at the Winn-Dixie, testified that appellant came into the store after lunch and asked her to cash the $243.22 check drawn on the Wilson Forest Products, Incorporated, account at the First Alabama Bank in Notasulga. The check purportedly signed by a J.C. Wilson was numbered 113.
After requiring appellant to fill out an application for a check-cashing card, Mrs. Thomas okayed the check and appellant cashed it at one of the registers. Mrs. Thomas stated that appellant was "by himself when he came into the store." Another Winn-Dixie employee, John Chappell, saw appellant getting the check approved by Mrs. Thomas on this occasion.
Mrs. Thomas testified that, two to three weeks later, after finding out that the check made payable to A.V. Jackson was "bad," appellant returned to the Winn-Dixie Store and attempted to cash a second check made out to a Franklin D. Tolliver. Mrs. Thomas motioned for the store manager not to okay this second check appellant presented.
Mr. Benny Nolen, vice-president-comptroller of Bama Wood, Incorporated[1], testified that check number 113 on the Wilson Forest Products, Incorporated, account was stolen from his desk drawer along with twenty-four other blank checks and a check writer in January of 1980. Mr. Nolen stated *Page 60 
that neither Wilson Forest Products, Incorporated, nor Bama Wood, Incorporated, ever wrote or issued the check to an A.V. Jackson. Mr. Nolen did not know an A.V. Jackson, nor did he know appellant.
Investigator Jonah B. Pemberton, Jr., of the Alabama Bureau of Investigation, stated that Mrs. Thomas and Mr. Chappell made a positive identification of appellant from a photographic lineup he presented to them on February 22, 1980.
Appellant presented evidence that he was illiterate. He testified in his own behalf that he had never seen Mrs. Thomas or been in the Winn-Dixie "a day in my life." Appellant also denied having ever seen the check made out to A.V. Jackson or the application for a check-cashing card.
This court is required to view the evidence in the light most favorable to the State, Bass v. State, 55 Ala. App. 88,313 So.2d 208 (1975), and not substitute its judgment for that of the jury. Cumbo v. State, Ala.Cr.App., 368 So.2d 871 cert. denied, 368 So.2d 877 (Ala. 1979). We hold that the direct and circumstantial evidence presented by the State was sufficient to prove every element necessary to establish a prima facie case under Section 13A-9-6 and to prove appellant's guilt beyond a reasonable doubt.
Appellant's central contention of error in this case concerns a conflict in the State's evidence which developed during the testimony of Mr. Edward Burkett, a Certified Latent Print Examiner with the Department of Public Safety. Investigator Pemberton had testified previously that he had taken a set of appellant's fingerprints, State's Exhibit 8, at the Elmore County Jail on April 30, 1980. Mr. Burkett testified that he compared appellant's known prints on State's Exhibit 8 with the latent prints found on the application for a check-cashing card, State's Exhibit 2, and with an enlargement of Exhibit 2, State's Exhibit 3. Mr. Burkett, after making his comparison, determined that appellant's known fingerprints and the latent prints were "one and the same." Mr. Burkett testified, however, that he made the comparison on March 31, 1980, one month before Investigator Pemberton took appellant's known fingerprints.
Appellant's initial objection to Mr. Burkett's testimony regarding fingerprint comparisons due to the discrepancy in dates was overruled; the trial court held that the discrepancy affected the credibility, but not the admissibility, of the evidence. Appellant's cross-examination of Burkett emphasized the discrepancy in dates testified to by Burkett and Pemberton. Later, after the State had rested and after appellant's first witness had testified, the prosecution admitted to the trial court, outside of the jury's presence, that there was a conflict in Burkett and Pemberton's testimony: "We are not telling the Court that both witnesses say that what they each testified to is correct. . . . We are saying that we have an unexplainable condition." The trial court ruled that the fingerprint evidence should be struck from the record and the jury instructed to disregard it. Appellant's motion for a mistrial was denied.
For the sake of clarity we here set out the trial court's admonition to the jury in its entirety:
 "THE COURT: Ladies and gentlemen of the jury, — first of all let the record reflect the entire jury is back in the Court Room.
 "It has been brought to my attention by the District Attorney's Office that there is an apparent unexplained discrepancy in regard to State's Exhibits 8 and 3? That's right, the fingerprints. There is apparently a discrepancy here so great that I am going to withdraw this one. You are not to consider it. The evidence tends to show that the fingerprint comparison that Mr. Burkett did, the latent print versus the ink print was done before the State's evidence would indicate that the latent print was ever taken. I'm sorry, that would be the ink print was ever taken. Well, that's physically impossible for there to have been a comparison before the print was taken. So, this evidence is going to be struck by the Court. You are to totally disregard it. *Page 61 
There is no evidence before the Court, whatsoever, at this time that the Defendant's fingerprint was on the card, State's Exhibit —
"MR. GILLIS: 2.
 "THE COURT: 2. There's no evidence of that, whatsoever. Now, let me ask you this: Is there anyone on the jury panel who feels that this would unduly affect their ability to render a just and true verdict in this case, based on that other evidence you have heard, and solely on that other evidence. If so, please raise your right hand.
(No response from jury.)
 "THE COURT: All right, does everyone feel that they can try this case and in their minds say to themselves that there is no evidence that the Defendant's fingerprints were on State's Exhibit 2? Can you all do that? Because there is no evidence that his fingerprints were on State's Exhibit 2. Okay?
(No response from jury.)
"THE COURT: Is the defense satisfied?
 "MR. GILLIS: Ask the record to affirmatively indicate that the jury indicated to the Court through silence or no response that they felt they could render a fair, just, and impartial verdict based on the other evidence as has come before the Court, and any additional evidence that may come before the Court.
 "THE COURT: Let me put it this way: There is an apparent mistake. There is no evidence that the Defendant's fingerprint is on State's Exhibit Number 2.
 "MR. GILLIS: And further, that they should disregard the testimony of Mr. Burkett, Your Honor.
 "THE COURT: Right. I want you to disregard Mr. Burkett's testimony entirely. Okay. Is there anyone who cannot do that? If so, please raise your right hand.
 "Okay. Let the record reflect that no one indicated they couldn't disregard Mr. Burkett's testimony entirely.
"Is the defense satisfied?
 "MR. WILLIAMS: No, sir. We still move for a mistrial on the grounds that the evidence has been — that the jury has heard the evidence and it is prejudicial to the Defendant.
 "THE COURT: Okay, that motion is denied. Is the State satisfied?
"MR. GILLIS: The State's satisfied.
 "THE COURT: I will say this to you; I want to emphasize this: What I'm saying goes solely as to the fingerprint evidence. What I'm saying doesn't affect any of the rest of the evidence whatsoever. I want you to understand that. Mr. Burkett — well, Mr. Burkett has testified that he compared some prints that he could not physically have compared, put it that way, because the prints weren't taken when he compared them. It's just that simple. It's an apparent error on his part; a mistake. There are no prints. There is not evidence of any prints, whatsoever, or any evidence whatsoever that the Defendant's prints were on that card. Mr. Burkett's testimony to the effect there was, is in error. Is that understood? Okay, let's proceed."
In our opinion the trial court's ruling and instructions to the jury pertaining to the fingerprint evidence could not have prejudiced appellant. Rule 45 ARAP. The trial court's ruling, in effect, did no more than what appellant had earlier raised in his initial objection to Burkett's testimony. Substantial error is not presumed. It is the burden of the appellant to show error, and, before a reversal of the judgment is to be had, it must appeal to the Court that the error complained of has probably injuriously affected the substantial rights of the appellant. Kabase v. State, 244 Ala. 182, 12 So.2d 766 (1943).
The granting of a mistrial is addressed to the broad discretion of the trial judge and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused. Woods v. State, 367 So.2d 982 (Ala. 1978). Where error is eradicable a mistrial is too drastic and is properly denied. Van Antwerp v. State, Ala.Cr.App.,358 So.2d 782, cert. denied, 358 So.2d 791 (Ala. 1978). *Page 62 
Moreover, the trial court may, ex mero motu, exclude improper evidence at any stage of the trial. Rogers v. State,36 Ala. App. 602, 61 So.2d 249 (1952). The question of admitting all the testimony of a witness, and then excluding it, is addressed largely to the sound discretion of the trial court.Sherard v. State, 16 Ala. App. 129, 75 So. 721 (1917).
We have reviewed the issues in this case as presented by appellant. In addition, we have searched the record, as required by law, for errors injuriously affecting appellant's substantial rights and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.
[1] Bama Wood, Inc. owned controlling interest in Wilson Forest Products, Inc.