Appellant, Wade Cargill, was indicted by the Montgomery County Grand Jury for the offense of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama (1975). Appellant was arraigned on March 17, 1982, where he entered a plea of not guilty and not guilty by reason of insanity. Appellant was tried before a jury and found guilty on May 25, 1982. The trial court sentenced appellant to a term of fifteen years in the state penitentiary.
Charles Williams, seventy years of age, owns and operates a grocery store in rural Montgomery County and lives in a house across the street from his store. On Sunday night, September 27, 1981, Mr. Williams was at home reading the newspaper when someone knocked on the front door. Mr. Williams went to the door and asked who was there. The visitor answered that it was "Jimmy." Mr. Williams opened the door, whereupon the visitor pointed a pistol in his face. Two other men were summoned by the man holding the pistol and all three intruders then entered Mr. Williams' home. Mr. Williams testified that the room was well lit as the men came in the house. The men demanded money, threatening to kill him if he did not comply with their demand. Mr. Williams gave the men the money he had in his pockets.
Mr. Williams was then taken into a bedroom, forced to the floor and his hands and feet were tied with bed sheets. He was lying face up on the floor. Mr. Williams testified that "they stood right over me . . . right there over me where I could see them *Page 522 
well." Mr. Williams further stated that the lighting in the bedroom was good.
While the intruders stood over Mr. Williams, they demanded more money. One of the three men then left the bedroom and went into the living room, where he found a green First Alabama Bank container which had approximately $3,000 in cash and checks. Upon finding the money, the robber shouted, "I've got the jackpot, I've got the jackpot." Mr. Williams testified that when he heard these shouts, the appellant was standing over him. Mr. Williams was then dragged into the bathroom and the three men left with the money.
After escaping from the bed sheets, Mr. Williams went to a neighbor's house to call the sheriff. He first tried to use the telephone in his home but the phone was dead because the wires had been cut by the robbers before they entered his home. The next morning Mr. Williams went to the Montgomery County Sheriff's Office and gave a description of the robbers to Sheriff's investigators. From his description, the investigators were able to make a composite sketch of the appellant.
At trial, Mr. Williams identified the appellant, Wade Cargill, as one of the three men who robbed him. When asked by the prosecutor if he was certain that appellant was one of the robbers, Mr. Williams stated:
 "The only thing that could be misleading about it, he had a dough face on. But he had so much trouble with the dough face falling down when he was trying to tie me up, that's when I got such a good look at his forehead and his nose and his mouth."
Mr. Williams testified that the mask fell down two or three times while appellant was "almost to his face."
On cross-examination, Mr. Williams stated that, on October 9, 1981, he swore out a warrant for a Charles Flynn for participation in the robbery now under consideration. However, he later admitted that Mr. Flynn was not one of the three men who robbed him on the night in question. Investigator N.W. Ward of the Montgomery County Sheriff's Office testified that the case against Mr. Flynn had been dismissed.
On further cross-examination, it was brought out that Mr. Williams signed an arrest warrant on November 13, 1981, charging Sylvester Willis, Wade Cargill and Eddie Mays, Jr., as being the three men who robbed him on the night in question. When asked how he came to know the names of his purported assailants he stated, "Well, the detectives worked the case up. You might get them to explain that to you." Mr. Williams denied making a statement at the earlier trial of Sylvester Willis that investigators told him the names of his assailants.
Appellant offered no evidence in his behalf.
In urging this court to reverse his conviction the only argument advanced by appellant is that the in-court identification of appellant by Mr. Williams was the result of police identification procedures so impermissibly suggestive as to render the in-court identification inadmissible as a matter of law.
Appellant admits in his brief that the trial record reveals little about the out-of-court identification procedure that was used. The record does show, however, that Mr. Williams gave a description of his assailants the morning after the robbery and that from this description, sheriff's investigators were able to construct a composite sketch of appellant. When asked at trial how he came to know appellant's name, Mr. Williams stated "the detectives worked the case up. You might get them to explain that to you." Mr. Williams denied that investigators told him the names of his purported assailants.
It is the burden of the appellant to show error, and, before a reversal of the judgment is to be had, it must appear to the court that the error complained of has probably injuriously affected the substantial rights of the appellant. Chillous v.State, 405 So.2d 58 (Ala.Cr.App. 1981); A.R.A.P. 45. In the case at bar, appellant argues suggestive police identification procedures *Page 523 
rendered the in-court identification of appellant by Mr. Williams inadmissible as a matter of law. However, upon review of the record, we find no evidence to imply that such improper police tactics were ever employed. There is nothing in the record to give any indication of the type of identification procedures used by the sheriff's investigators except that a composite sketch was made after they were supplied a description by Mr. Williams. We find nothing in this procedure to be unduly suggestive.
Even if there has been an unduly suggestive pre-trial identification procedure, the in-court identification testimony need not be excluded if the prosecution can establish by clear and convincing evidence that the in-court testimony, rather than stemming from the unfair pre-trial confrontation, has an independent source. Brazell v. State, 369 So.2d 25, 29
(Ala.Cr.App. 1978) cert. denied, 369 So.2d 31 (Ala. 1979).
In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382,34 L.Ed.2d 401 (1972), the United States Supreme Court listed five factors which would be considered in determining whether an independent basis exists for the in-court identification. See also Griffin v. State, 356 So.2d 723 (Ala.Cr.App.) cert. denied 356 So.2d 728 (Ala. 1978).
 "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
 Neil v. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382.
Applying the Neil standards to the facts of this case we find:
(1) Mr. Williams had ample opportunity to view appellant at the time of the robbery. The lighting in the house was good and appellant's mask fell down "two or three" times exposing his face.
(2) Mr. Williams, when asked how close appellant got to him, stated that appellant was "almost to my face." He further testified that ". . . they were right over me. Right there over me where I could see them well."
(3) Mr. Williams's prior description of appellant was accurate, so accurate in fact, that investigators were able to construct a composite sketch of appellant.
(4) Without hesitation, Mr. Williams twice identified appellant as being one of the robbers. Although Mr. Williams stated that the mask worn by appellant made his identification more difficult, he still got a "good look at his forehead and his nose and his mouth" when his mask kept falling down.
(5) Defendant's exhibit number four shows that Mr. Williams signed an affidavit for the purpose of securing an arrest warrant against appellant on November 13, 1981, approximately one and a half months after the robbery occurred. Trial was had on May 25, 1982, where Mr. Williams positively identified appellant as one of his assailants. Even though approximately eight months elapsed between the robbery and in-court identification, the length of time was not exceedingly long when viewed in conjunction with the other factors that are highly favorable to the state.
The in-court identification was clearly shown to have been based upon eyewitness observation of the robber at the time of the robbery.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is due to be affirmed and it is so ordered.
AFFIRMED.
All the Judges concur. *Page 524