Appellant Greg Lewis Oakley was indicted for assault with intent to murder, and subsequently convicted of assault and battery by a jury. Appellant was sentenced to six months' hard labor and fined $500, plus costs. The major argument advanced on appeal is that the in-court identification of appellant by the victim of the assault was tainted by the use of impermissibly suggestive out-of-court identification procedures. We agree.
At approximately 6 a.m. on July 19, 1979, the twelve-year-old victim, also the State's primary witness, Sheree Aneese McCain, went to swimming practice at the Huffman-Roebuck YMCA in Birmingham. *Page 460 
Sheree went into the YMCA dressing room to investigate an insect bite, and was putting her pants back on when she saw someone enter the room. This person walked into the room and "stuck" her with a hypodermic syringe, injecting an unspecified quantity of a drug later determined to be ketamine into Sheree's posterior area. Sheree did not notice the hypodermic syringe until after she was injected. Shortly thereafter Sheree became dizzy and left the dressing room to get help. According to Sheree, the entire incident lasted from fifteen to twenty seconds. The assailant departed without further incident as Sheree was leaving the dressing room. The hypodermic syringe was later found in a nearby garbage can. Sheree found a YMCA employee, told her what happened, and then became unconscious. She awoke that evening at the Childrens Hospital, and after a short stay, was discharged.
While in the hospital, Sheree gave a description of the assailant to police officers, which she later did not remember giving. After her release from the hospital, she aided the police in drawing a composite picture.
Two and a half years after the incident, Sheree identified her assailant from a photographic lineup which forms the basis of the appellant's contention of error.
Sheree testified at trial that she felt under pressure to "pick" the person who assaulted her. On the way to the photographic lineup her mother had told her that it was her duty and responsibility to pick out a photograph from the array. Sheree later described the procedure as "like a test . . . I was afraid to choose because I was afraid of getting something wrong."
Sergeant James E. Gay conducted the lineup, and Sheree's mother was present. All three individuals present at the photographic lineup testified. The testimony of Sergeant Gay and Mrs. McCain was in conflict with the testimony of Sheree.
Sheree testified that she was shown "about ten" photographs, which she studied and narrowed down to two photographs. Officer Gay told her to choose between the two pictures, which she did. Officer Gay then told her she picked the wrong one. On cross-examination, Sheree testified that she had been told that appellant was one of the two men in the photographs she had ultimately chosen. Although her testimony was not precise, she did testify that it had been communicated to her that her assailant was the man in the photo that she had not chosen. The next day Mrs. McCain contacted Officer Gay and told him that Sheree was positive the other man, appellant, was the person who assaulted her on July 19, 1979.
At trial Sheree identified Oakley as her assailant. In an attempt to explain her eventual identification of appellant, Sheree testified that her change of mind resulted from talking with her mother and praying about it. Sheree's mother testified that she knew appellant was a suspect and had seen his picture prior to the photographic lineup, but had not communicated any of this information to Sheree prior to or after the photographic lineup.
Appellant contends that the photographic lineup was unnecessarily suggestive, due to the information given to Sheree after narrowing down her choice of possible assailants to two individuals, i.e., that the suspected assailant was among the two and she chose the wrong one. Appellant argues that this action irreparably tainted Sheree's subsequent in-court identification of appellant as the assailant.
In determining whether an out-of-court identification procedure has violated appellant's due process rights, we are guided by established case law. In Stovall v. Denno,388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the United States Supreme Court established the "totality of the circumstances" test to determine if an out-of-court identification procedure "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process".Stovall at 301-302, 87 S.Ct. at 1972.
Each case must be determined on its own facts and will be set aside only if the procedure *Page 461 
"was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971,19 L.Ed.2d 1247 (1968); Fitchard v. State, 424 So.2d 674
(Ala.Crim.App. 1982); Daniels v. State, 335 So.2d 251
(Ala.Crim.App. 1976).
This court has held that in order to satisfy the totality of the circumstances test, a two-part analysis is required:
 ". . . . The first question is whether the initial identification procedure was `unnecessarily' [Stovall] or `impermissibly' [Simmons] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been `unnecessarily' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that allowing the witness to make an in-court identification would be a denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970)."
Brazell v. State, 369 So.2d 25, 28-29 (Ala.Crim.App. 1978).
In answer to the threshold question, we find that the out-of-court identification procedure was impermissibly suggestive. To allow a witness to identify a defendant from a photographic lineup wherein the witness is told that one of two individuals is the suspect, the witness selects the wrong person, and then is allowed to identify the second person as the criminal, would totally erode the photographic lineup technique, reducing the procedure to a mere formality. Sheree was the State's primary witness against the appellant. She was the State's only eyewitness to the crime specified in the indictment. Her testimony and in-court identification were the key factors in appellant's trial. We, therefore, find that appellant has met his burden in showing that the error complained of has probably injuriously affected the substantial rights of appellant. Chillous v. State, 405 So.2d 58
(Ala.Crim.App. 1981); A.R.A.P. 45.
We now turn to the second part of this two-step analysis. Where it has been shown that an unduly suggestive pretrial identification procedure has taken place, the in-court identification testimony need not be excluded if the prosecution can establish by clear and convincing evidence that the identification stems from an independent source rather than the unfair pretrial photographic lineup. Phillips v. State,409 So.2d 918 (Ala.Crim.App. 1981). Cartee v. State, 390 So.2d 1121
(Ala.Crim.App. 1980); Carpenter v. State, 380 So.2d 368
(Ala.Crim.App. 1980); Brazell v. State, 369 So.2d 25
(Ala.Crim.App. 1978), cert. denied, 369 So.2d 31 (Ala. 1979).
Sheree's mere assertion that her in-court identification was based on her observation of appellant during the crime is not sufficient evidence of an independent source. United States v.Gambrill, 449 F.2d 1148 (D.C. Cir. 1971). In order to determine whether an independent basis exists to support the in-court identification, the five factors set forth in Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), must be applied. See Cargill v. State, 432 So.2d 520 (Ala.Crim.App. 1983); Cartee v. State, supra. These considerations are as follows:
 "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
Neil v. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382 (1972).
In applying these factors, as follows, we conclude that clear and convincing evidence is not present to support a finding that the identification stemmed from an independent source: *Page 462 
(1) Sheree testified that she observed the assailant when he entered the dressing room and that the entire incident lasted fifteen to twenty seconds. In certain circumstances, a fifteen to twenty second observation of an individual may be sufficient. However, when we consider this evidence of Sheree's opportunity to view her assailant in light of the remaining factors, we are not convinced that her opportunity was sufficient in this case.
(2) The degree of attention exhibited by Sheree is clearly evidenced from the record. Sheree testified that she did not notice the hypodermic syringe until after the assault. She was in fact facing the wall rather than the door, when the assailant entered the dressing room. We do not find from the record any high degree of attentiveness directed toward the assailant until after the assault, at which time the assailant turned and left the dressing room.
(3) In reviewing Sheree's prior description of her assailant, we find absolutely no support in the record for a determination that it was accurate. The only thing apparent from the record and exhibits before us is that Sheree's conception of her assailant did not coincide with the appearance of appellant until after she was told she had picked the wrong photograph. We conclude that her accuracy level was insufficient.
(4) Sheree's level of certainty at the time of the photographic lineup was also demonstratively below standard. Sheree testified that the first photograph she identified as that of her assailant "pretty much looked like him". She related her indecision to Officer Gay, who told her, "Try to pick out the one that looks most like him." Officer Gay's testimony supports Sheree's testimony in this regard. Officer Gay further testified that Sheree could not make a positive identification at the photographic lineup. It was not until after she was told that she had chosen the wrong photograph that Sheree identified appellant as her assailant.
(5) The length of time between the crime and the photographic lineup was approximately two and a half years. This is an extremely lengthy period of time under the circumstances of this case. In making this observation, we do not attempt to create a standard or set limits on the amount of time between the crime and the pretrial identification; each such determination should be made according to the facts of the particular case. Under the facts of this case, the lapse of time weighs heavily against the identification, when viewed in conjunction with the other four factors discussed above. InNeil v. Biggers, supra, there was a lapse of seven months between the time of the rape and the confrontation. In discussing this lapse of time, the Court stated:
 "This would be a seriously negative factor in most cases. Here, however, the testimony is undisputed that the victim made no previous identification at any showup, lineup, or photographic showing. Her record for reliability was thus a good one, as she had previously resisted whatever suggestiveness inheres in a showup. Weighing all the factors, we find no substantial likelihood of misidentification."
Neil v. Biggers, at 201, 93 S.Ct. at 383. In the case at bar, the lapse of two and a half years in all probability created a substantial likelihood of misidentification, when viewed under the totality of the circumstances.
The State has failed to prove by clear and convincing evidence that Sheree's in-court identification of appellant stemmed from a source independent of the suggestive photographic lineup. Appellant's right to due process was thus violated; he was not afforded a fair and impartial trial. The pretrial identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This is evident from the State's failure to prove a source of identification independent of the photographic lineup.
Appellant raises two other issues on appeal which we do not deem necessary to address, due to our foregoing findings. *Page 463 
We, therefore, hold that the in-court identification of appellant was unreliable, when weighed in the totality of the circumstances, and should not have been admitted. Accordingly, we reverse the judgment and remand the cause to the lower court.
REVERSED AND REMANDED.
All the Judges concur.