William Gernard Edwards was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The jury found him "guilty as charged in the indictment." The trial judge sentenced him to 60 years' imprisonment in the state penitentiary. He appeals.
During the late evening of November 9, 1988, Susan Cumby was working at the Junior Food Store on Marvyn Parkway in Opelika, Alabama. At approximately 11:30 p.m. the appellant came into the store and told Cumby that his car had broken down and asked for a "case quarter" in return for his change. Cumby got a 25-cent piece from her purse and gave it to the appellant in exchange for two dimes and five pennies. The appellant then walked outside and made a telephone call. He returned to the store about five minutes later.
Elmer Jack Causey and Charles Baron Hamby arrived at the Junior Food Store shortly before 12:00 midnight on November 9, 1988. When Causey went in the store, he noticed a black man standing next to the door. After making his purchase, Causey returned to his truck. Both Causey and Hamby noticed a knife in the appellant's back pocket.
Causey and Hamby started to leave the parking lot, but changed their minds and pulled back into the parking space. Hamby went in the store and purchased an item. While Hamby was in the store, he noticed the appellant purchase a piece of candy. Hamby then returned to the truck. He told Causey that the store clerk did not appear to be nervous, so they left.
The appellant then purchased two pieces of candy ("fireballs"). When Cumby prepared to give the appellant his change, the appellant said: "This is a robbery." The appellant got a knife from his pocket and demanded that Cumby open the drawer. After a brief exchange with Cumby, the appellant pushed the "no sale" button on the cash register and, when it opened, grabbed the money. He forced Cumby to open her wallet and then grabbed the money from it and ran from the store.
Willie Gene Tucker had just finished putting gasoline in his automobile at the Junior Food Store at the time of this robbery. When Tucker went toward the store to pay for the gasoline, he saw the appellant walk past him. Then Cumby ran out of the store and said she had been robbed. Tucker turned and flagged down a state trooper whom he saw on Marvyn Parkway.
Lannie Stanford, an Alabama state trooper, was driving home in the area of the Junior Food Store on the Marvyn Parkway. He noticed a suspicious vehicle parked on Ballard Avenue, which is located just off Marvyn Parkway. Stanford pulled behind the vehicle and wrote down the tag number. When Stanford left and drove toward the Junior Food Store, he saw the appellant *Page 866 
run from the store and get into a blue Pontiac parked on Ballard Avenue.
As Stanford pulled into the parking lot, Tucker told the State Trooper that the appellant had just robbed the store. When Stanford left the store, he saw a person in the blue Pontiac duck behind the steering wheel. A chase ensued as Stanford tried to apprehend the appellant. Stanford, along with help from members of the Opelika Police Department, captured this appellant and placed him under arrest. A search of the appellant and the area where he was apprehended resulted in the seizure of a sweater, some money, and two pieces of "fireball" candy.
 I
The appellant contends that the State failed to prove a prima facie case to sustain his conviction for robbery in the first degree. The appellant argues that his motion for judgment of acquittal should have been granted.
 "When a motion for a judgment of acquittal before submission of cause to a jury is made on the grounds that the state has failed to make out a prima facie case because the evidence is insufficient to support a finding of guilty beyond a reasonable doubt, it is the duty of the trial court to determine the sufficiency of the evidence to sustain a conviction under the indictment. In determining if the evidence of the state is sufficient to sustain a verdict, the trial court should consider only the evidence before the jury of the facts at the time the motion was made, and must consider it most favorably to the state. When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit the case for the jury to determine the weight it will give the evidence. . . ."
Sullivan v. State, 441 So.2d 130, 135 (Ala.Cr.App. 1983). See Mitchell v. State, 570 So.2d 738
(Ala.Cr.App. 1990).
The appellant's challenge of the State's evidence arises from a discrepancy in the testimony as to whether the person who committed the robbery was intoxicated or had an odor of alcohol. There was testimony by Cumby (the store clerk) and Causey (a customer) that the appellant did not appear to be intoxicated. However, the state trooper and the police officer who assisted in the arrest testified that the appellant was intoxicated. Because of this discrepancy, the appellant claims that he did not commit the robbery and that he was stopped because the state trooper lost contact with the initial suspect and got behind his car by mistake.
The State's evidence showed that Cumby picked the appellant out of several photographs shown to her at the police station and she made an in-court identification of the appellant. Further, Trooper Stanford made an in-court identification of the appellant.
There are several other factors which lead the court to conclude that the State established that the appellant committed the robbery. These factors include: (1) that the appellant's car was seen in the area near the store before and after the robbery; Trooper Stanford testified that after the robbery he saw the appellant get in the car and drive off; (2) when the appellant was apprehended, the police found a substantial amount of money leading to the appellant; (3) they found two pieces of candy; the same type of candy which the appellant had purchased from the store; and (4) Cynthia Maria Dowdell, the appellant's girlfriend, testified that a sweater found in the area where he was apprehended was the appellant's sweater.
Clearly, there is sufficient evidence from which the jury could, by fair inference, have found the appellant guilty of robbery in the first degree. We find that the trial court acted properly in denying the appellant's motion for judgment of acquittal.
 II
The appellant next contends that the trial court erred in allowing Cumby's in-court identification of him because, he argues, it was based on an unduly suggestive out-of-court photographic lineup. Specifically, the appellant complains that five of the seven exhibits did not met the criteria which the appellant gave in her description of the robber. *Page 867 
"[C]onvictions based on eyewitnesses identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States, 390 U.S. 377, 384,88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).
This court has employed a two-step analysis in determining whether an out-of-court identification procedure has violated a defendant's due process rights. In Oakley v. State,457 So.2d 459 (Ala.Cr.App. 1984), citing Brazell v.State, 369 So.2d 25, 28-29 (Ala.Crim.App. 1978), cert. denied, 369 So.2d 31 (Ala. 1979). this court set out a two-step analysis:
 " 'The first question is whether the initial identification procedure was "unnecessarily" [Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] or "impermissibly" [Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been "unnecessarily" or "impermissibly" suggestive was so "conducive to irreparable mistaken identification" [Stovall] or had such a tendency "to give rise to a very substantial likelihood of irreparable misidentification" [Simmons] that allowing the witness to make an in-court identification would be a denial of due process.' United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970)."
The facts in this case indicate that after the robbery, Cumby heard on the police radio that a suspect had been apprehended. Also a detective informed her of this same information. On the morning after the robbery, Cumby went to the police station to identify the person who committed the robbery. Cumby was shown a photographic array of seven persons.
When Cumby gave a description of the robbery suspect, she stated that the person had a little facial hair across his lip. On cross-examination the appellant's counsel questioned Cumby extensively about the seven photographs and whether the person had a mustache or not. While there was some difference in facial hair of the persons in the photo lineup, this alone would not indicate that the lineup was unduly suggestive. If all the persons in the photographic spread had general physical characteristics compatible with those of the appellant, the display was not unduly suggestive. United States v.Mays, 822 F.2d 793 (8th Cir. 1987).
Here, there was a difference in the facial hair of persons in the photographs. However, the persons in the photographs were all somewhat similar. Cumby testified that all of the photos were of black males with fairly close-cut hair and of approximately the same age.
Moreover, during the appellant's motion for mistrial he also claimed that the photographic lineup was tainted because, he says, prior to viewing the photographs Cumby believed that the robber was among those whose pictures she would be shown. This alone would not make the photographic lineup suggestive. Even if the police officer suggested to Cumby that the robber's picture was one of the seven pictures, this would not make the photographic lineup suggestive. This court has held inJones v. State, 415 So.2d 1233 (Ala.Cr.App. 1982), "that a person [who] is actually told the suspect's photograph is among the pictures, although generally inadvisable, does not contaminate the identification proceeding." See Ramsey v.State, 441 So.2d 1065 (Ala.Cr.App. 1983).
Based on these factors we find that the photographic lineup was not unnecessarily or impermissibly suggestive. Thus, there is no need for the court to go further and discuss whether the procedure was "so conducive to irreparable mistaken identification . . . that allowing the witness to make an in-court identification would be a denial of due process."Oakley, supra; Brazell, supra.
No error appears in regard to this issue.
 III
The appellant's final contention is that the State failed to comply with a request *Page 868 
for discovery of certain evidence and, in doing so, violatedBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). The appellant's motion for discovery in pertinent part requested the following: "[a]ny and all tangible objects, currency, weapons, controlled substances, photographs, books, papers, documents or similar items which are intended for use by the State as evidence or which were obtained from or belong to the defendant." Specifically, the appellant contends the State failed to produce (1) the sweater found near where the appellant was apprehended and (2) the photographs used for the photographic lineup.
To establish a Brady violation, the appellant must demonstrate that: (1) the prosecutor suppressed evidence, (2) the evidence was favorable to the appellant or was exculpatory, and (3) the evidence was material. Ex parte Kennedy,472 So.2d 1106 (Ala. 1985); Ex parte Brown,548 So.2d 993 (Ala. 1989).
During investigation of the robbery, a sweater was found and seized by the police department, along with other items. Officer Carrington testified that when the appellant's attorney came to the police department to view the evidence, he was given an opportunity to view the sweater. He said that the evidence in the case was placed on three chairs for the appellant's attorney to inspect, and he said that the sweater was in a sealed bag, but that the appellant's attorney failed to look inside the bag or inquire as to its contents.
We find that there was no evidence that the sweater was suppressed. Although the officer could possibly have made the evidence more accessible to appellant by opening the bag, we cannot conclude that this evidence was suppressed.
Even had the evidence been suppressed, there is no showing that the sweater was exculpatory. The appellant's girlfriend, Cynthia Maria Dowdell, testified that the sweater found was this appellant's. Clearly, this evidence was not favorable to the appellant but is a factor which damages his case. Thus we find no Brady violation with reference to the sweater.
The appellant was not, prior to trial, presented with the photographs used in the photographic lineup. The next question is whether these photographs were exculpatory. The photographs contained pictures of seven persons, all with similar characteristics. The appellant has not shown how having these photographs would have been favorable to him.
Moreover, Cumby, who had an opportunity to view the appellant during the robbery, made an in-court identification of him as the robber. Also, Trooper Stanford made an in-court identification of the appellant as the person he had arrested. These in-court identifications were based on a source independent of the photographs at issue. This court stated inTucker v. State, 398 So.2d 417, 419-20 (Ala.Cr.App. 1981), that "[w]here as here the identification of the appellant had a source independent of any photographs which may have been used in the identification process, then no error is shown by not requiring the production of the photographs."
Thus, in this case we find that no Brady violation exists as to the photographs. No error is shown.
For the reasons stated above, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.