Carl Curtis Glass was indicted by a Montgomery Grand Jury for robbery in the first degree. Upon arraignment, appellant entered a plea of not guilty and not guilty by reason of insanity. Appellant filed a motion to suppress the evidence, on which a hearing was held by the trial court. After the hearing, appellant's motion to suppress was overruled and the case was set for trial. On the trial date, appellant withdrew his demand for a jury trial and entered into a stipulation with the State, stipulating venue and agreeing that the case be submitted to the trial court for decision based on the evidence presented at the suppression hearing. The trial court adjudged appellant guilty of the charged offense and sentenced him to twenty years. Hence this appeal.
Appellant presents two issues for review: (1) whether the trial court erred in overruling his motion to suppress, and (2) whether the State proved a prima facie case.
 I
Appellant contends that his arrest was illegal in that it was a warrantless arrest without probable cause, and that therefore the evidence, all of which was obtained as a result of the arrest, should have been excluded.
During the evening hours of February 5, 1981, a man entered Super Foods grocery store on West South Boulevard in Montgomery, approached the store manager, and told him he was "just the man he needed to see." The man ordered the store manager to "go up and get all the money out of the office." The store manager testified that the robber had a gun in the right pocket of a green army fatigue jacket he was wearing but did not pull it out, and that he was wearing a green tobbogan over his face with "holes cut out about the size of a tomato." The store manager further testified that he could clearly see the robber's eyes, eyebrows, cheeks, and a part of his forehead.
The robber accompanied the store manager to the office, where the store manager turned over to him currency, checks, money *Page 689 
orders, and food stamps in the approximate value of $16,000. The robber then left the store, and the store manager called the police to report the robbery, giving a description of the robber.
Sergeant Locklar of the Montgomery Police Department responded to the police radio dispatch, arriving at the grocery store within about four minutes. He received from the store personnel a description of the robber as being a white male, 6'3", 260-270 pounds, having very heavy dark eyebrows and a mustache, and wearing army boots, a green fatigue army jacket, and a ski mask with holes. Sergeant Locklar testified that this description was the description given by the police radio dispatcher "except for a few extra details."
After going to the bowling lane adjoining the grocery store to look for a person fitting the robber's description, Sergeant Locklar repositioned his vehicle where he could watch the entire parking lot area.
As Sergeant Locklar was observing the parking lot area, he noticed a tractor trailer truck parked in the vicinity of the bowling lane, about sixty to sixty-five yards from his vehicle. As he was watching, the truck was cranked and its interior light was switched on, and he observed that the driver was a white male with black hair. As the truck was moving across the parking lot to leave, the driver continuously watched the police car Sergeant Locklar was occupying. Sergeant Locklar then radioed a request to any police units in the area to stop the truck.
Corporal Hitson of the Montgomery Police Department had been in the vicinity of the rear of the store questioning various people as to whether they had seen anyone leaving the area. He heard Sergeant Locklar's radio request and observed the truck "traveling in the right lane at the traffic light and subsequently running through a red light." He pursued the truck for about half a mile before it stopped. The driver of the truck, appellant, got out of the cab with his hands up; Corporal Hitson did not have his pistol drawn. Upon seeing appellant, Corporal Hitson noted that his physical appearance was similar to the description of the robber previously broadcast over the police radio. Corporal Hitson then directed appellant to move the truck out of the lane of traffic, which he did. As appellant was getting out of the truck cab, Corporal Hitson noticed a pistol holster lying on the bed in the rear of the cab.
Appellant inquired of Corporal Hitson the nature of the problem, and Corporal Hitson advised him that he was suspected of being the person who had robbed Super Foods. Appellant fainted.
Appellant was carried back to Super Foods and was positively identified by the store personnel as the robber.
From these events, we now come to the issue of whether the arrest was lawful. If the arrest was lawful, the evidence obtained as a result of the arrest is admissible; if the arrest was unlawful, the evidence is not admissible.
Appellant's arrest, having been effected without a warrant, is governed by § 15-10-3, Code of Alabama 1975, which provides in relevant part that "an officer may arrest any person without a warrant when a felony has been committed and he has reasonable cause to believe that the person arrested committed it."
The record is silent of any direct testimony as to the exact point in time at which the arrest was effected.
The point at which the arrest was effected is material in determining the legality of the arrest and whether "reasonable cause" existed at that instant of time. The record is silent of any direct testimony as to when the arrest was effected during the sequence of events. Appellant contends that the arrest was effected at the time the truck was stopped by Corporal Hitson, that being the point of time at which the officer curtailed appellant's freedom of movement. Appellant relies on Foy v.State, 387 So.2d 321 (Ala.Cr.App. 1980).
An arrest consists in taking, under real or assumed authority, custody of another person for the purpose of holding or *Page 690 
detaining him to answer a criminal charge or civil demand.Central of Georgia Ry. Co. v. Carlock, 196 Ala. 659, 72 So. 261
(1916). The officer's stopping the truck was not tantamount to taking the driver in custody for the purpose of detaining him to answer a criminal charge. We therefore conclude that the arrest was not then effected, contrary to appellant's contention. Rather, we find under the facts that appellant's "freedom of movement" was curtailed at the point when Corporal Hitson advised him that he was suspected of being the person who robbed Super Foods, and that the arrest occurred at that point in time.
The activity of stopping the truck falls within the concept of an investigative stop, a detention which may be based upon circumstances falling short of probable cause to arrest. Butlerv. State, 380 So.2d 381 (Ala.Cr.App. 1980); Bagony v. City ofBirmingham, 371 So.2d 80 (Ala.Cr.App. 1979); Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A report received over the police radio that a person fitting a certain description and traveling in a certain described vehicle is wanted in connection with a felony, constitutes sufficient probable cause to stop such vehicle and make an investigation.McClendon v. State, 341 So.2d 174 (Ala.Cr.App. 1976), cert.quashed, 341 So.2d 178 (Ala. 1977).
At the time of the arrest, Corporal Hitson was obviously aware of several factors lending credence to probable cause for arrest: (1) he was aware that an armed robbery had occurred a few minutes earlier in the immediate vicinity, (2) he had determined by his independent investigation that the robber had not fled the area by some route at the rear of the store, (3) he observed appellant's truck leaving the area at a high rate of speed and running a red light, (4) appellant's description matched the physical description of the robber, and (5) he observed an empty pistol holster in the truck. These factors clearly provided probable cause for the arrest of appellant.
Appellant contends that the officer did not inform him of the officer's authority and cause of arrest, in violation of §15-10-4, Code of Alabama 1975. First, if the officer's authority is already known, the reason for the statute is satisfied. From the facts, it is obvious that appellant was aware that Corporal Hitson was an officer; he had been stopped by Corporal Hitson, and had emerged from the truck cab with his hands raised. The officer, according to his testimony, had not drawn his gun. Second, appellant was told the purpose of his arrest, i.e., to be taken to Super Foods to be viewed as a robbery suspect.
Appellant further contends that the on-the-scene identification was fatally improper in that it amounted to a highly suggestive and prejudicial one-man showup.
It is settled law that prompt, on-the-scene confrontations are not constitutionally impermissible, but are consistent with good police work. Hobbs v. State, 401 So.2d 276 (Ala.Cr.App. 1981). Since a showup is by its inherent nature suggestive, we must assess the reliability of the in-court identification. The totality of the circumstances must be considered in assessing the reliability of the identification. The factors include (1) the opportunity of the witness to view the criminal act at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, and (4) the level of certainty demonstrated by the witness at the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401 (1972). After considering all of these factors and weighing them against the effect of the suggestiveness of the on-the-scene confrontation, we conclude that the store manager's in-court identification of appellant, which was made without objection by appellant, was highly reliable.
We find that the trial court's ruling on the motion to suppress was proper.
 II
Appellant contends that the State did not prove a prima facie case in that the necessary elements of robbery were not established by the evidence. A review of the facts will reveal that appellant's position is not well taken. However, this matter is not *Page 691 
preserved for appellate review because, having been tried without a jury, there was no motion to exclude at the end of the State's case in chief, no request for an affirmation charge, and no motion for a new trial. Thus, the sufficiency of the evidence is not reviewable. See McCraney v. State,381 So.2d 102 (Ala.Cr.App. 1980), and authorities therein cited.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.