The appellant, Steven B. Hutchinson, convicted of rape in the first degree, was sentenced to life imprisonment. He now raises seven issues on appeal.
The state's evidence tended to show that on the night of July 31, 1982, the victim of this rape, a young woman four years out of high school, was spending the night with a married couple in Hueytown. The couple had gone to a party next door, leaving the victim alone in their apartment. Because of the heat, she had left the outer door open. The screen door was closed, but not latched. She had dressed for bed and was watching television. The lights in the living room and the bedroom were on. Around midnight a man later identified as the appellant entered the apartment with a silver-colored gun in his hand. He forced the victim down the hall into a bedroom, telling her that if she didn't do what he wanted he would shoot her. He undressed her and himself and forced the victim to perform oral sex on him. Then he raped her. During the act of intercourse, a man appeared at a window of the bedroom, knocked on it, called the appellant by name, and asked him what he was doing. Appellant replied that he would be out in a minute. After the sex act, the victim went to the bathroom because she was sick. The victim then heard the report of a gunshot from another room. An expired cartridge was later found and was proved to have been fired from the appellant's gun. After the gunshot, the victim came out of the bathroom and the appellant threatened her that if she told anyone he would "get" her. After he left, she called her friends at *Page 891 
the party. One of them called the Hueytown Police. They took the victim's statement and she was then taken to a hospital, where a rape kit exam was performed upon her. The next afternoon the victim identified the appellant from photographs.
The police officers talked to the people who were at the party in the adjoining house at 119 Wheeler Drive. They learned that one of the men at the party had a pistol. When they asked for a description of this man, the description was the same as the young woman had given for the man who raped her. This gave them the name. The following occurred during the examination of Officer Grangier:
 "Q (BY MR. ROGERS): And when you talked to Mr. Atkins, tell us what conversation you had with him at that time. "A: Mr. Atkins told me that his cousin, Robert Johnson and a friend of his cousin by the name of Steve, came to the party at 119 Wheeler Drive. And while they were there at the party he noticed that the male he referred to as Steve had a pistol on him and he described the individual to me and also described the weapon to me — the pistol.
 "Q: What description did he give you of the individual?
 "A: He said the individual was around six foot tall, weighed 180-185 pounds, he had brown hair, medium length hair.
 "Q: Did he give you any description of what the individual was wearing at that time.
 "A: He said that he was — he told me that he was wearing blue jeans and that was all. I mean, he didn't refer to any other dress.
"Q: Blue jeans?
"A: Yes.
 "Q: And did he give you a description of the pistol that this individual had on his person?
"A: Yes sir, he did.
"Q: What description was that, please sir?
 "A: He said that it was a nickel-plated or silver in color automatic pistol."
The officer then proceeded to secure a description of the vehicles employed by Robert Johnson and Steve. One of the officers knew Robert Johnson from school and also knew him through his police work. He testified to the description of the man given him by the victim as a man approximately 5'11" tall, probably weighing about 180 pounds, and having brown medium length hair. The officer also testified that the victim told him that piece of the grip was missing off the gun. The person at the party had also told him that a piece of grip was missing off the gun.
The victim, having been shown a revolver and an automatic pistol, said that the weapon she saw was an automatic. This was, of course, consistent with the expended cartridge, which was from a .380 automatic pistol. The officers went to Robert Johnson's residence at about 4:00 or 4:30 in the afternoon on the day of the rape and parked their unmarked police vehicle. An hour or more later, they observed a brown Ford Mustang drive past. It had two males in it, and the officer recognized the driver as Robert Johnson. While the car the officers were in was unmarked, it had a division between the front seat and the back seat, had blackwall tires, and had a police antennae on the back, so that it was identifiable as a police vehicle. The men in the Mustang saw the officers sitting in the car and sped away. Officers Grangier and Chesser pursued this car, turning on their portable blue light, and were able to stop it. As they approached the car, Officer Chesser told Officer Grangier that he saw a gun after Johnson stepped out of the car. They got the other person to get out of the car, placed both in the police vehicle, and read them their Miranda warnings. A pistol was retrieved from the floorboard of the passenger side of the automobile. The pistol fitted the description given by the victim and by George Atkins. The passenger gave his name as Steve B. Hutchinson.
 I
The appellant argues that the trial court erred to reversal when it allowed the *Page 892 
state to comment in its closing argument about facts he claims were not in evidence. The appellant asserts that he was not allowed to testify to an injury which had made him sterile. He reasons that the state should not be allowed to argue that the appellant had not offered a seminal sample. The objected to comment was:
 "Now, there has been no testimony from the defendant that I offered to give them a seminal sample.
 "MR. FAWWAL: Judge, we object. We don't have to offer anything. That is the State's responsibility to prove their case.
"THE COURT: Overruled."
The appellant wanted to testify that he was sterile, a fact which he asserts would render impossible or irrelevant a seminal fluid test. In fact, of course, a low sperm count or complete absence of live sperm does not equate the absence of seminal fluid. He did not offer any proof, medical or otherwise, of an absence of seminal fluid. He simply wanted to say that he was sterile. That would not have been relevant testimony. The court did not err in overruling the objection. The argument was based on the evidence.
 II
The appellant next asserts that the trial court erred when it denied his motion for judgment of acquittal. Rape is defined in § 13A-6-61, Code of Alabama 1975, as follows:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion; or
 "(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
 "(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old.
 "(b) Rape in the first degree is a Class A felony."
The appellant asserts that he could not be convicted when the only evidence against him was the testimony of the victim. We have often upheld rape convictions based on the testimony of the victim. It would be a rare case in which a rape was committed in the presence of impartial witnesses. There was also proof of penetration and of force employed. The projectile found at the scene of the crime bore marks showing it to have been fired from the appellant's gun. The evidence adduced by the state was such that the jury could lawfully have been convinced beyond a reasonable doubt of appellant's guilt. The court did not err in denying appellant's motion for judgment of acquittal.
 III
The appellant asserts that the trial court erred when it did not suppress the in-court identification of the appellant. The afternoon after the rape, the victim was shown several photographs of the appellant, whom she immediately recognized as the man who raped her. The victim was never shown any photographs other than the ones of the appellant. During the trial, the victim made an in-court identification of the appellant. She testified that her identification was based on her recollection of the event and not on the photographs. She said that he looked different on the night of the crime because at that time he had longer hair and a "shadow beard," but that he was without question the same man.
The totality of the circumstances test is to be applied when determining whether an out-of-court identification procedure has violated appellant's due process rights. Stovall v. Denno,388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Hobbs v.State, 401 So.2d 276 (Ala.Cr.App. 1981).
 "This court has held that in order to satisfy the totality of the circumstances test, a two-part analysis is required:
 " '. . . The first question is whether the initial identification procedure was "unnecessarily" [Stovall] or "impermissibly" [Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)] suggestive. If it is found to have been so, the court must then proceed to the question whether the *Page 893 
procedure found to have been "unnecessarily" or "impermissibly" suggestive was so "conducive to irreparable mistaken identification" [Stovall] or had such a tendency "to give rise to a very substantial likelihood of irreparable misidentification" [Simmons] that allowing the witness to make an incourt identification would be denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970).'
 "Brazell v. State, 369 So.2d 25, 28-29
(Ala.Crim.App. 1978)."
Oakley v. State, 457 So.2d 459, 461 (Ala.Cr.App. 1984).
If pretrial identification has occurred, the incourt identification need not be excluded if the state can prove by clear and convincing evidence that the identification stems from an independent source rather than the photographic lineup.Phillips v. State, 409 So.2d 918 (Ala.Cr.App. 1981); Cartee v.State, 390 So.2d 1121 (Ala.Cr.App. 1980); Carpenter v. State,380 So.2d 368 (Ala.Cr.App. 1980); Brazell v. State,369 So.2d 25 (Ala.Cr.App. 1979); Oakley v. State, supra.
Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401
(1972), sets forth the five factors to be utilized in determining if an independent basis exists. Those five are: 1) opportunity of the witness to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. Neil, 409 U.S. at 199-200, 93 S.Ct. at 382.
Our application of these factors is as follows: 1) The victim testified that during the whole incident, which lasted about twenty minutes, she was able to see the appellant's face. The living room was lit by an overhead light and the bedroom by a bedside lamp. 2) The victim's degree of attention is supported by her testimony. She testified lucidly and in great detail as to the course of events that evening. 3) The victim's prior description of the appellant was reasonably accurate. She told the police that her assailant was approximately 5'11" tall, weighed around 180 pounds, and had medium length brown hair. She added that he looked "kinda scruffy." He wore blue jeans and a shirt. 4) Her level of certainty at the photographic lineup is not in question in that she immediately and unequivocally recognized and identified Hutchinson as the rapist. 5) The length of time between the crime and the photographic line-up was less than 24 hours.
Every factor in this case weighs in favor of an accurate identification. If the evidence already recited were not absolutely conclusive, it should also be noted that expert testimony identified the spent shell casing found at the scene as having been fired from the .380 automatic pistol taken from the appellant at the time of his arrest. The victim also recognized and identified Hutchinson at the preliminary hearing.
Moreover, the facts in this case are similar to those found in Cooley v. State, 439 So.2d 193, 195 (Ala.Cr.App. 1983), wherein this court held that "the mere fact that the appellant was subjected to a one-man show-up does not necessarily render that identification procedure impermissively suggestive." To the same effect are United States v. Kessler, 692 F.2d 584 (9th Cir. 1982); State v. Perkins, 141 Ariz. 278, 686 P.2d 1248
(1984); Hudson v. State, 675 S.W.2d 507 (Tex.Crim.App. 1984);State v. Collette, 199 Conn. 308, 507 A.2d 99 (1986). Seegenerally, W. LaFave and J. Israel, Vol. 1, § 7.4, CriminalProcedure.
 "Additionally, 'it is settled law that prompt, on-the-scene confrontations are not constitutionally impermissible, but are consistent with good police work.' (Citations omitted.) Hobbs v. State, 401 So.2d 276, 279 (Ala.Cr.App. 1981). A prompt on-the-scene identification of a suspect increases the reliability of the identification under the following rationale:
 " '[T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification *Page 894 
which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh.' Id. at 280, quoting Bates v. United States, 405 F.2d 1104 (D.C. Cir. 1968)."
O'Dell v. State, 482 So.2d 1341, 1346 (Ala.Cr.App. 1985).
We see little difference between a one-man showup and the instant one-man photographic lineup. The use of a single photograph does not necessarily interject prejudice. UnitedStates v. Baxter, 492 F.2d 150 (9th Cir.), cert. dismissed,414 U.S. 801, 94 S.Ct. 16, 38 L.Ed.2d 38 (1973), cert. denied,416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); Kalmbach v.Jones, 488 F.2d 134 (5th Cir. 1973), cert. denied,417 U.S. 913, 94 S.Ct. 2614, 41 L.Ed.2d 218 (1974). As Judge McMillan stated in O'Dell:
 "After considering these factors, we conclude, as this court in Glass v. State, 424 So.2d 687, 690
(Ala.Cr.App. 1982), concluded, that the identification of the appellant as the person who had committed the crime was 'highly reliable.' In the present case, the pretrial confrontation was not so 'impermissibly suggestive' that it created a 'substantial risk of misidentification,' and thus the identification was proper. Jackson v. State, 414 So.2d 1014, 1018 (Ala.Cr.App. 1982)." 482 So.2d at 1346-47.
We therefore hold that the in-court identification was not the result of an impermissibly suggestive photographic array, and was properly admitted.
 IV
The appellant also argues that the trial court erred to reversal when it did not suppress the appellant's confession. The appellant argues that he was under the influence of drugs at the time of his confession and that it was improperly induced by a promise of leniency. The court obviously disbelieved this testimony.
The admissibility of a custodial confession involves a two-part analysis: first, whether Miranda warnings were given and second, whether the confession was voluntarily given.Kendrick v. State, 444 So.2d 905 (Ala.Cr.App. 1984). The appellant in this case does not contend that Miranda warnings were not given, and only the voluntariness of his confession is at issue.
The determination of the voluntariness of a confession rests in the sound discretion of the trial court. Stallworth v.State, 445 So.2d 998 (Ala.Cr.App. 1984); Hammins v. State,439 So.2d 809 (Ala.Cr.App. 1983). In this case the appellant's testimony was directly contradicted by police officers, who testified that they did not believe the appellant was under the influence of drugs and that they did not promise him leniency. The trial court did not abuse its discretion. Bradley v. State,337 So.2d 47 (Ala.Cr.App. 1976).
 V
The appellant next asserts that the trial court erred in failing to give appellant's requested jury charges. After the trial court gave his charge to the jury the appellant made the following objection:
 "MR. FAWWAL: Your Honor, the only objection to the charge is the failure to give defendant's requested charge # 3, # 5 — I thought you were going to give # 6 — as well as # 7, # 8 and # 11 based on the fact that each of those are proper statements of law necessary in this case and not properly covered by the Court's oral charge.
 "And we could include the requested written charge # 13 that was not concluded [sic]."
To preserve for review, grounds must be stated. No grounds were stated here. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982).
 VI
Other issues presented do not merit discussion. *Page 895 
For the foregoing reasons, we affirm.
AFFIRMED.
All the Judges concur.