The appellant, Lester O'Neal Lockett, was indicted for rape in the first degree. Forty-five days after the rape, the victim identified Lockett from a photographic array of six black and white photographs of six black males. Approximately one year after the rape, the victim again identified Lockett from a photographic array of six color photographs of six black males. At neither display of the photographs did the police officer say anything about them other than to ask the victim if her assailant was one of the six men in the array. At trial, Lockett's attorney objected to the admission of each photographic array on the ground that there was no evidence as to the circumstances under which the photographs were taken. He also based his objection on the contention that the pictures of Lockett were "docket room" pictures. During the trial, the victim identified Lockett as the man who attacked her. Lockett's attorney also objected to the in-court identification, contending that the victim was basing the identification on her viewing of the photographic arrays and not on her observation of her assailant at the time of the crime. Lockett was convicted of rape in the first degree and was sentenced to life imprisonment.
On appeal, Lockett raises three issues.
 I
First, Lockett contends that there was insufficient evidence to convict him of rape in the first degree. For the state to establish a prima facie case of rape in the first degree in this instance, it must show that Lockett engaged in sexual intercourse by force, or without the victim's consent. Sexual intercourse means any penetration, however slight, of the male sex organ into the female sex organ. Section 13A-6-61, Code of Alabama 1975. The victim's testimony alone can establish a prima facie case of rape. Patterson v. State, 455 So.2d 284
(Ala. Cir.App. 1984).
At the trial, the victim testified as follows:
 "Q: Now, the law requires me to ask you these questions. Did his penis penetrate your vagina?
"A: Yes.
"Q: And was this without your consent.
"A: Yes.
This alone establishes the state's prima facie case of first degree rape against Lockett. "In reviewing the sufficiency of the evidence this court is required to view the evidence in the light most favorable to the state and not substitute its judgment for that of the jury." Smelcher v. State,385 So.2d 653 (Ala. Cir.App. 1980). Because the state established a prima facie case of first degree rape, we find that there is a sufficient basis to support the jury's verdict.
 II
Second, Lockett contends that the trial court committed reversible error when it allowed the victim to identify him in court. *Page 879 
Lockett argues that the in-court identification was tainted by the victim's having previously viewed a photographic array in which his photograph had a line chart in the background.
"If pretrial identification has occurred, the in-court identification need not be excluded if the state can prove by clear and convincing evidence that the identification stems from an independent source rather than the photographic lineup." Hutchinson v. State, 516 So.2d 889 (Ala.Cr.App. 1987);Phillips v. State, 409 So.2d 918 (Ala.Cr.App. 1981).
 "Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), sets forth the five factors to be utilized in determining if an independent basis exists. Those five are: 1) opportunity of the witness to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. Neil, 409 U.S. at 199-200, 93 S.Ct. at 382." Hutchinson, at 893.
Applying these factors to the present case reveals the following: 1) The victim testified as follows:
 "Q: Could you please describe to the jury please the lighting there?
 "A: Well there's two lights in each breezeway and then there's a light right overhead near to where I was standing on the corner of the building, a big large light. And then there's light from the front of the building.
"Q: So fairly well lighted?
"A: Fairly average well lit.
 "Q: How close was he to you when you were talking to him?
"A: Just a couple of feet.
"Q: Would it have been closer than this?
"A: Uh-huh.
"Q: Could it have possibly been this close?
"A: A little closer.
"Q: Could it have been this close?
"A: Just, you know, casual.
 "Q: Okay. Was your light on there in the dining area?
 "A: Yes. It was on from where I had left it on earlier.
"Q: Once inside could you see his face as well?
 "A: When I looked up at him I could. He kept pounding me back down in the floor. But every time I turned to look at him I could see him.
"Q: Was there a light on in the hall?
 "A: Yes. The light was on from the hall that comes, the same switch from the dining room. There's two switches I flip when I come in the door."
It is obvious that the victim had several opportunities to clearly see her assailant immediately before and during the incident. 2) The victim testified that the incident lasted approximately thirty minutes. She was able to draw a sketch of her assailant and was able to testify lucidly and in great detail as to the course of events that evening. Her degree of attention was high. 3) Although many victims of crime readily recognize their assailants, they may do a poor job of giving an accurate description. However, this victim's description of her assailant proved both accurate and detailed. The victim described him as being of medium build, approximately five feet, eight inches tall, and approximately 20 years old. She said he had a slightly round, baby face, small eyes, flat nose, medium dark complexion, and short, kinky, well-groomed hair. This description fit Lockett almost exactly. 4) The victim's level of certainty, at both photographic arrays, was high. Both times she positively identified Lockett. 5) Forty-five days passed from the time the incident occurred to when the victim was shown the first photographic array. Approximately one year passed from the time the incident occurred to when the victim was shown the second photographic array. The trial took place fifteen months after the rape occurred. This was not an unreasonably long period of time. *Page 880 
The victim was able to identify Lockett in court on the basis of her observations of him during the crime and not as a result of either one of the photographic arrays. Therefore, the victim's in-court identification of Lockett as her assailant was admissible.
 III
Third, Lockett contends that it was reversible error to allow the jury to view a photograph of him that was in the photographic arrays shown to the victim. The photograph had a line chart in the background. Lockett contends that this prejudiced him because, he says, it demonstrated that he had been involved in previous criminal activity.
As can be deduced from the record, all the photographs used in both photographic arrays shown to the victim had line charts in the background and all were received into evidence. There was nothing individually suggestive about Lockett's photograph. Lockett's assertion that his photograph shown to the jury contained a visible case number is not supported by the record. Further, this court can only deal with the facts as they appear on the record. The presence of lines in a photograph do not mean that the person in the photograph is a criminal, has a criminal record, or has committed a crime involving moral turpitude.
Any relevant evidence presented by the state is meant to lead to a conviction, and, therefore, is always "prejudicial" to the accused. However, the presentation of Lockett's photograph to the jury was highly probative and outweighed any prejudicial effect it may have had.
 IV
In anticipation of possible further appellate review, we have elected to address this case on the merits. However, we note that the appellant has failed to cite precedents to support his contentions on appeal. "Arguments not based on any legal authority have the same effect as if no argument has been made, and the argument will be deemed waived." Johnson v. State,500 So.2d 494, 498 (Ala.Cr.App. 1986), citing Vinzant v. State,462 So.2d 1037 (Ala.Cr.App. 1984), cert. denied, 462 So.2d 1037
(Ala. 1985). All arguments presented in a brief not supported by legal precedents may be deemed waived and the result is the same as if no brief had been filed. "According to A.R.A.P., 45(b), this court is not obligated to consider questions or issues not presented in briefs on appeal." Johnson, supra. We elected, however, to address this case on the merits. The judgment of the trial court should be affirmed.
AFFIRMED.
All the Judges concur.