The appellant was convicted of theft in the second degree, in violation of § 13A-8-4, Code of Alabama (1975). He was sentenced to a four-year split sentence: two years to be served in prison with the balance suspended and four years' probation.
 I
The appellant argues that the trial court erred in admitting the in-court identification of the appellant by two State's witnesses. One of the witnesses, who was employed as the store's loss prevention supervisor, testified that he first observed the appellant and his accomplice by video camera on the store's surveillance system. He watched the men move around the store for approximately 15 minutes. When the men left the store, he pursued them and caught up to the appellant. He struggled with the appellant and ripped his shirt. He further testified that, during the struggle, he had the opportunity to see the appellant's face for approximately 20 seconds. The day following the incident, the witness contacted the police and gave them the names of two suspects, one being that of the appellant.
The appellant argues that this witness's identification was unreliable because he initially described the suspects as juveniles, possibly 16 or 17 years old; whereas the appellant was born on July 28, 1968, and was thus 19 years old at the time of the offense. Such a discrepancy in the witness's identification does not affect its admissibility, but rather goes to the weight and credibility of the identification.Jennings v. State, 513 So.2d 91, 93 (Ala.Cr.App. 1987). In court, the witness testified that he could positively identify the appellant as the man whose face he observed during the struggle on the evening of the theft.
The other State's witness who identified the appellant in court testified that he was the store manager on the night of the offense. He testified that he was contacted in regard to two possible suspects who appeared to be preparing to steal merchandise. He then proceeded to the camera room, where he was given a walkie-talkie and walked out onto the floor to observe the suspects. He observed them walk through various departments. He then exited the store and walked around to an exit window from which he could watch the suspects. He observed them move some merchandise toward the exit, take possession *Page 613 
of the merchandise, and exit the store without having paid for it. As they walked out of the store, he testified, he approached them and identified himself, whereupon they ran away. He pursued them for a distance, returned to the store, and insured that the police had been contacted. He detailed the suspects' appearance on the night in question and identified the appellant in court as one of the men. He testified that several days later an official came to the store and spoke to the other witness.
The loss prevention supervisor testified that, after calling the police to inform them of the names of the suspects, an officer showed him "a couple of photographs." He testified that he told the officer that the men pictured were the men who had committed the theft. The officer and he then took the photographs and compared the men depicted in them with those shown in the videotape. They determined that they were the same people. The loss prevention supervisor maintained, however, that he was not shown a photographic lineup. The store manager testified that he "happened back to" the office and observed pictures which were lying out on the desk. He testified that he could not recall how many photographs were there, but that there were more than two. He testified that the photographs were not brought for purposes of identification. He further indicated that one of the photographs depicted the appellant. During recross-examination, the manager testified as follows:
 "Q: Okay, and this officer had these photos out there and they said, 'These are the guys who did it'?
 "A: No, they didn't say that. They were talking about the case. They were talking about the capture or the attempted capture of the two individuals, and —
 "Q: Well, if I may, sir, the question is, Did they tell you that those were the folks that did this act?
"A: They alluded to it, yes."
The appellant argues that such testimony demonstrates that improper pre-trial identification procedures were used by the police. However, the manager also testified that "I don't know if they were trying to catch the fellows at that point, but I already had a clear-cut picture of what the two men looked like in my mind, whether I had been shown the pictures or not." The witness's testimony proves that his identification stemmed from an independent source rather than from the photographic lineup.Hutchinson v. State, 516 So.2d 889 (Ala.Cr.App. 1987).
 " 'Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), sets forth the five factors to be utilized in determining if an independent basis exists. Those five are: 1) opportunity of the witness to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. Neil, 409 U.S. at 199-200, 93 S.Ct. at 382.' "
516 So.2d 889, 893.
Applying these factors to the present case, it is clear that the manager had an independent basis for his identification. He testified that he observed the suspects for a period of ten to fifteen minutes and was within at least 20 feet or closer to the suspects for at least two to three minutes. He testified that he watched them closely and noted that "[i]n the business I'm in, when you have a situation like this, we're trained to look very closely at the individual and try to remember certain characteristics. . . ." The manager gave an extremely detailed and accurate description of the appellant, displayed a high level of certainty in court, and testified that he was extremely certain when he saw the photographs. There was a gap of only a few days between the incident and when the witness observed the photographs, and approximately seven months passed between the incident and the trial.
Both of these witnesses were able to identify the appellant in court on the basis of their observations of him during the crime and not as a result of observing the photographs. Therefore, the in-court identifications *Page 614 
were admissible. Lockett v. State, 518 So.2d 877 (Ala.Cr.App. 1987).
 II
The appellant argues that the trial court erred in admitting a videotape into evidence when because, he argues, the proper foundation had not been laid. The appellant contends that the recording should be subject to the same foundational analysis as a tape recording. He also argues that a proper chain of custody was not established for its introduction. However, this court has determined that video recordings are admissible under the rules for the admission of photographic evidence.Molina v. State, 533 So.2d 701 (Ala.Cr.App. 1988).
 "We adopt the 'better reasoned rule' that 'video recordings are admissible on the same basis as other types of photographic evidence, i.e. admissible when verified by some witness who can state that they are a reliable reproduction of the recorded picture and sound.' C. Scott, Photographic Evidence, supra, § 1297 at 98 n. 42.20 (1987 Pocket Part).
" '. . . .
 "Accordingly, we reaffirm the predicate for admitting videotape [motion picture] evidence announced by our Supreme Court in U.A.W.-C.I.O. v. Russell, [264 Ala. 456, 88 So.2d 175 (1956), aff'd, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958),] and we specifically reject the dicta in Voudrie v. State, 387 So.2d [248] at 256, and cases following it, that have upheld the more stringent seven-pronged predicate for admitting sound recordings. . . .
 "The videotape was thus admissible without a showing of its chain of custody. '[A] proper foundation laid for the accuracy of what the film portrays obviates the need to establish a chain of custody to demonstrate its authenticity.' State v. Deering, 291 N.W.2d 38, 41 (Iowa 1980). Accord, Mikus v. United States, 433 F.2d 719, 725-26 (2d Cir. 1970); Paramore v. State, 229 So.2d 855, 859 (Fla. 1969), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972); Bremer v. State, 18 Md. App. 291, 307 A.2d 503, 535
(1973), cert. denied, 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974) (Videotape of attempted assassination of Governor George Wallace admitted without proving chain of custody of the film)."
Molina v. State, supra, at 712.
The record indicates that the loss prevention supervisor and the store manager both testified that they viewed the tape on the day before trial and that the tape was a fair and accurate representation of the actual events they observed on the evening of the theft. Therefore, the videotape was properly admitted into evidence.
 III
The appellant argues that the trial court erred in failing to charge the jury as to theft in the third degree as a lesser-included offense. The appellant was indicted for theft of property valued in excess of $25 that was taken from a building where the property was stored or kept for sale, in violation of § 13A-8-4(e), Code of Alabama (1975).
Theft of property in the third degree is defined by § 13A-8-5
as follows:
 "The theft of property which does not exceed $100 in value and which is not taken from the person of another or the theft of property which does not exceed $25 in value if taken from or in a building where said property is sold or stored constitutes theft of property in the third degree."
The facts clearly establish that the property was taken from the store where the property was normally sold or stored. Therefore, in order for a charge of theft of property in the third degree to be warranted, there must be a factual basis from which the jury could have concluded that the property did not exceed $25 in value. See Averette v. State, 469 So.2d 1371
(Ala.Cr.App. 1985). The evidence clearly established that the value of the property stolen exceeded $25. The store manager testified that he believed the value of the stolen property was approximately $200. He also testified that several items were recovered *Page 615 
and that their value was as follows: jogging suit valued at $35, sweat pants valued at $18, and a sweat shirt valued at $16. There was no evidence which would have brought this offense within the definition of theft of property in the third degree. Jones v. State, 514 So.2d 1060 (Ala.Cr.App. 1987), cert. denied, 514 So.2d 1068 (Ala. 1987). Therefore, the trial court did not err in refusing to charge the jury on theft in the third degree.
 IV
The appellant argues that the State failed to prove venue. However, the store manager testified that the store at which he worked was the scene of the theft. He testified that the store was located in Huntsville, Madison County, Alabama. The store was clearly established as the site of the theft. Proof of venue is sufficient if it can be reasonably inferred by the jury from the facts and circumstances presented. Segars v.State, 409 So.2d 1003 (Ala.Cr.App. 1982). Venue may be established by the testimony of a sole witness. Wilson v.State, 384 So.2d 1243 (Ala.Cr.App. 1980). Therefore, the State sufficiently proved venue.
AFFIRMED.
All Judges concur.